*E-FILED - 2/15/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY ANTHONY ROBERTS,<br><br>    Plaintiff,<br><br> vs.<br><br>LIEUTENANT PAULSON and OFFICER REID,<br><br>    Defendants. | No. C 08-4771 RMW (PR)<br><br>ORDER DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING TO PRO SE SETTLEMENT PROGRAM |

Plaintiff filed this pro se amended civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that San Francisco County Lieutenant Paulson and San Francisco County Deputy Reid violated his right to be free from excessive force. Defendants have moved for summary judgment, arguing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Plaintiff has filed an opposition, and defendants have filed a reply.

After a review of the record, for the reasons stated below, the court DENIES defendants' motion for summary judgment.

## BACKGROUND[1]

Plaintiff was arrested in San Francisco on July 31, 2008. (Decl. Gerchow, Ex. C, Plaintiff's Deposition Transcript ("Tr.") at 72.) At the time of his arrest, although plaintiff was

---

[1] The following facts are taken in the light most favorable to plaintiff.

1  extremely high from cocaine use, he was coherent. (Id. at 87.) Plaintiff had been on a month-
2  long binge of abusing cocaine. (Id. at 73.) By the time he arrived at the jail, he was no longer
3  high, but was very hungry and tired. (Id. at 94.) At some point, plaintiff had breakfast and fell
4  asleep. (Id. at 124.)

5  Plaintiff was awoken by another inmate who let him know that the guards were
6  conducting a walk-through inspection. (Id. at 124-25, 126.) Plaintiff decided that he wasn't
7  going to get up and instead, fell back asleep. (Id. at 125.) Plaintiff was woken up at least two
8  more times by inmates, and the inmates urged him to assist in preparation of the walk-through.
9  (Id. at 127-28.) Plaintiff told them that was not going to do so, but offered to tell the officers that
10 he could not participate because he was too tired and needed the rest because he had been on a
11 binge. (Id. at 128.)

12 The inmates explained to plaintiff that the "inspection" involved a clean-up process. (Id.
13 at 135.) Plaintiff was unaware of the process because he had never been in that jail before. (Id.)
14 The inspection involved making the bed, folding the towels, helping to clean up the walls and the
15 shower. (Id.) Plaintiff told the inmates that he was not going to do it. (Id.)

16 Plaintiff got up, put on his clothes and shoes, and asked to speak with a deputy. (Id. at
17 134, 136.) Defendant Paulson came to see him. (Id. at 134.) Plaintiff asked to be reclassified so
18 that he could "detox" from the drugs because he could not participate in the inspection. (Id.)
19 Paulson concluded that plaintiff was being uncooperative. (Id. at 137.) Plaintiff told him that it
20 was not that he did not want to cooperate, but that he was merely too tired to comply. (Id.)

21 Paulson told one of the deputies to "cuff" plaintiff. (Id.) Plaintiff was cuffed and pushed
22 to the ground. (Id.) Defendant Reid kicked plaintiff in the back of his head. (Id. at 137, 169.)
23 Reid ordered other deputies to push plaintiff's arms up toward the ceiling while his hands were
24 cuffed behind his back, which forced plaintiff to face down toward the ground. (Amended
25 Complaint ("AC") at 6.) Plaintiff was escorted, walking backwards, to the hallway and into a
26 "rubber" room. (Tr. at 137; AC at 6.) Once in the rubber room, Paulson watched several
27 officers slam him onto a wooden table, and he was kicked again by Reid. (AC at 6.) Because
28 the key to the handcuffs broke when an officer tried to remove them (AC at 7), officers used

1  bolt-cutters to cut off his handcuffs. (Tr. at 191.) Plaintiff's flesh on his left wrist was cut in the
2  process and plaintiff could see his bone. (Id.) He was bleeding heavily. (AC at 7.) Plaintiff was
3  re-cuffed and placed in administrative segregation where he was slammed onto his stomach and
4  kneed in the back while both defendants watched. (Id.) Eventually plaintiff was freed, and then
5  kicked in the head a third time by Reid. (Id.) When plaintiff went to medical that same
6  morning, he received gauze, band-aids, an ace bandage, and naproxen. (Tr. at 249.) As a result
7  of this incident, plaintiff states that he suffered injuries to both his wrists, his left shoulder, his
8  upper and lower back, and his right ankle. (Id.)

## DISCUSSION

A.   Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

Liberty Lobby, Inc., 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

B.  Evidence Considered

A district court can only consider admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). Here, plaintiff has filed motions to include medical records and other documents (docket nos. 70, 71, and 74) as evidence in support of an opposition to defendants' motion for summary judgment. Defendants have moved to strike the attached documents on the grounds that they are unauthenticated and are inadmissible hearsay. Plaintiff has not filed an opposition.

Authentication is a condition precedent to admissibility; unauthenticated documents cannot be considered in a motion for summary judgment. Id. In a summary judgment motion, documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. Id. at 773-74. Hearsay evidence also is inadmissible and thus may not be considered on summary judgment. See id. at 778. Accordingly, the court GRANTS defendants' motion to strike and will not consider the documents filed in docket numbers 70, 71, and 74.

C.  Plaintiff's Claim

Plaintiff claims that defendants used brutal force against him in an attempt to "make an example" out of him for not participating in the walk-through inspection. The arbitrary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992). When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. Id. at 6-7. In determining whether the use

1  of force was for the purpose of maintaining or restoring discipline, or for the malicious and
2  sadistic purpose of causing harm, a court may evaluate the need for application of force, the
3  relationship between that need and the amount of force used, the extent of any injury inflicted,
4  the threat reasonably perceived by the responsible officials, and any efforts made to temper the
5  severity of a forceful response. Id. at 7. In reviewing these factors, courts must accord prison
6  administrators wide-ranging deference in the adoption and execution of polices and practices to
7  further institutional order and security. Jeffers v. Gomez, 267 F.3d 895, 917 (9th Cir. 2001).

8  The Due Process Clause of the Fourteenth Amendment protects a post-arraignment
9  pretrial detainee from the use of excessive force that amounts to punishment. Graham v.
10 Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535-39 (1979)).
11 The Eighth Amendment excessive force standard for prisoners and the Fourteenth Amendment
12 substantive due process standard for pretrial detainees are analyzed in the same manner. The
13 analysis of whether the actions of defendants constitute a Fourteenth Amendment violation is
14 informed by White v. Roper, 901 F.2d 1501 (9th Cir. 1990). In White, the Ninth Circuit stated
15 that to show a violation of substantive due process, a plaintiff must show "egregious government
16 conduct in the form of excessive and brutal use of physical force." Id. at 1507 (citations
17 omitted). The Constitution does not prohibit uses of force that appear unreasonable in hindsight,
18 so long as the officers were acting in good faith and for a legitimate end. Whitley, 75 U.S. at
19 322. In order for an excessive force case to go to the jury, the evidence must go "beyond a mere
20 dispute over the reasonableness of a particular use of force or the existence of arguable superior
21 alternatives" to support "a reliable inference of wantonness in the infliction of pain." Id.

22 Here, plaintiff alleges that Paulson ordered officers to cuff plaintiff and Reid kicked him
23 in the head. Plaintiff also alleges that the group of officers verbally abused him and then
24 slammed him onto a wooden table in the rubber room. Plaintiff claims that he suffered injuries
25 to several parts of his body, including his back, wrists, shoulder, and ankle.

26 Paulson and Reid both averred that they do not remember this incident. (Decl. Paulson at
27 2; Decl. Reid at 2.) Moreover, Paulson asserted that transporting an inmate with his head held
28 down, walking backwards, and handcuffed is the "standard handcuffing and transportation

1 method used by deputies" to "safely move resistive inmates from one location to another." (Decl.
2 Paulson at 2.) Further, Paulson stated that "when the lock on a pair of handcuffs becomes stuck,
3 the fastest and safest way to remove the handcuffs is by using bolt cutters." (Id.) Plaintiff does
4 not dispute these statements.

5 Defendants argue that the extent of plaintiff's injuries as reported in the medical records
6 contradict plaintiff's allegations of injuries. Specifically, on the date of the incident, plaintiff
7 was seen for medical treatment and the medical notes indicate, "Seen in clinic complaint of wrist
8 wound due to handcuffs." (Decl. Goldenson, Ex. A.) The notes do not mention any bleeding,
9 much less heavy bleeding, or any other physical injury, as alleged by plaintiff in his amended
10 complaint. (Id.) One week later, plaintiff returned to seek medical treatment and complained
11 that he had pain in his wrist because, when he was arrested, his handcuffs were too tight around
12 his left wrist; the medical notes do not indicate that plaintiff's complaints resulted from the
13 challenged incident. (Id., Ex. B.) Three weeks after the incident, plaintiff returned to medical to
14 seek a strong pain medication because he claimed that his hands continued to hurt. (Id., Ex. C.)
15 Later on, however, plaintiff admitted to the nurse that he wanted to have vicodin so that he could
16 sleep at night. (Id.) In plaintiff's submitted documents, a September 10, 2008 medical record
17 states that plaintiff had a recurring left shoulder pain from a dislocation that occurred in 1997.
18 On January 27, 2009, plaintiff's medical records indicate that he had a lower back probram
19 which began when he had a motor vehicle accident in 1988. A review of the documents
20 submitted by plaintiff contradicts plaintiff's version of events. There is no evidence of heavy
21 bleeding due to officers' cutting his flesh to the bone when removing the handcuffs on August 1,
22 2008, and no evidence of any injuries sustained to plaintiff's left shoulder, upper and lower back,
23 or his right ankle as a result of the August 1 incident. Moreover, in light of the undisputed
24 statement that the handcuffing and transportation methods used are standard to maintain
25 discipline, force was applied in a good-faith effort, rather than maliciously and sadistically to
26 cause harm. Hudson. 503 U.S. at 6-7. Viewed in the light most favorable to plaintiff, there is an
27 absence of evidence that defendants' use of force with respect to handcuffing and transporting
28 plaintiff was done with wantonness or an intent to maliciously cause pain.

1    However, there is a genuine issue of material fact as to whether Reid's use of force --
2 namely, his kicking of plaintiff -- was excessive. According to plaintiff, after he was
3 handcuffed, Reid proceeded to kick him at least three separate times. (Tr. at 169-70.)
4 Defendants dispute that this occurred. None of the medical records make mention of any injuries
5 or complaints of injuries caused by kicking. While the extent of the injury may indicate the
6 amount of force applied, a significant injury is not a threshold for stating an excessive force
7 claim. Hudson, 503 U.S. at 7. An inmate who is gratuitously beaten by guards does not lose his
8 ability to pursue an excessive force claim merely because he has the good fortune to escape
9 without serious injury. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178-79 (2010) (per curiam).
10 Therefore, viewing the facts in the light most favorable to the plaintiff, there are genuine issues
11 of material fact as to whether Reid, in fact, kicked plaintiff, and if so, whether application of
12 such force was applied in good faith. Accordingly, defendants' motion for summary judgment is
13 DENIED.

D.    Referral to Pro Se Prisoner Settlement Program

   Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims set forth above. The proceedings will consist of one or more conferences as determined by Judge Vadas. The conferences shall be conducted with defendants, or the representative for defendants, attending by videoconferencing if they so choose. If these settlement proceedings do not resolve this matter, the court will then set this matter for trial and consider a renewed motion from plaintiff for appointment of counsel.

**CONCLUSION**

1.    Defendants' motion to for summary judgment is DENIED.

2.    The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claims in this action, as described above. The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of this order, or as soon as practicable. Judge Vadas shall coordinate a time and

1 date for a settlement conference with all interested parties or their representatives and, within **ten**
2 **(10) days** after the conclusion of the settlement proceedings, file with the court a report
3 regarding the prisoner settlement proceedings. If these settlement proceedings to do not resolve
4 this matter, plaintiff can file a renewed motion for appointment of counsel and the court will then
5 set this matter for trial.

6     3.    The clerk of the court shall mail a copy of the court file, including a copy of
7 this order, to Judge Vadas in Eureka, California.

8     4.    The instant case is STAYED pending the settlement conference
9 proceedings.

10     IT IS SO ORDERED.
11 DATED:  2/14/11

*Ronald M. Whyte*
RONALD M. WHYTE
12 United States District Judge

Order Denying Defendants' Motion for Summary Judgment; Referring to Pro Se Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Roberts771msjdeny.wpd     8